WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

BERNADINE O. FOSTER, an individual,
Plaintiff,
vs.
BANK OF AMERICA N.A., a business, and BAC HOME LOANS SERVICING, LP,
Defendants.

No. 2:13-cv-2202-HRH

# O R D E R

## Motion to Dismiss

Defendants move to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

## Background

Plaintiff is Bernadine O. Foster. Defendants are Bank of America, N.A. for itself and as successor by merger to defendant BAC Home Loans Servicing, LP.

[1]Docket No. 7.

[2]Docket No. 8.

In her complaint, plaintiff alleges that she purchased property located at 50522 W. Mayer Blvd., in Maricopa, Arizona in 1999 by obtaining a loan.[3] In 2001, Bank of America became the loan servicer on plaintiff's loan.[4]

Plaintiff alleges that in 2007, Norlita Sparrow, a Bank of America manager, "insisted on helping [her] with her monthly payment. Plaintiff later found out that Ms. Sparrow withheld three months of check[s] for her mortgage which caused [p]laintiff to look like she was in default although she was not."[5] Plaintiff alleges that "[i]n August of 2007," she "was informed that she would need to complete a modification for the property and dwelling in order to straighten out [her] account."[6] Plaintiff alleges that she paid "more than $7000.00 to bring her account up to date."[7]

Plaintiff alleges that "[i]n January 2010, [she] went to Bank of America ... to file an insurance claim for her property because several storms damaged and destroyed the property...."[8] Plaintiff alleges that she continued to pay her mortgage while waiting for the insurance claim to be processed "until April 1, 2010, when she was informed by [a] Bank

---

[3]Complaint at ¶¶ 11-12, attached to Notice of Removal, Docket No. 1.

[4]Id. at ¶ 6.

[5]Id. at ¶ 16.

[6]Id. at ¶ 18.

[7]Id.

[8]Id. at ¶ 19.

of America employee that she could not pay the April payment because the building and the property was under [M]aking Homes Affordable and [an] insurance claim."[9] Plaintiff alleges that this same employee also told her "that she was current and paid up on the land till 2012."[10]

Plaintiff alleges that "[i]n June 2010, [she] was informed by Bank of America employees to complete a modification application on her property ... to insure that Bank of America would not foreclose on the property while [she] was going through [the] insurance claim."[11] Plaintiff alleges that she completed a modification application.[12]

Plaintiff alleges that "[i]n October 2010, [she] began receiving notices from various realtors regarding the property being sold and that she was no longer the owner."[13] Plaintiff alleges that she "also began receiving threats and harassment from parties claiming to own the property" and that "this caused [her] husband to have congestive heart failure."[14]

---

[9] Id. at ¶ 26.

[10] Id. at ¶ 27.

[11] Id. at ¶ 28.

[12] Id. at ¶ 29.

[13] Id. at ¶ 30.

[14] Id. at ¶ 31.

Plaintiff alleges that she contacted Bank of America in November 2010 and that a Ms. Squire "informed [p]laintiff that she should not have completed a modification on her loan."[15] Plaintiff alleges that at this "point Ms. Squire began to contact various departments within Bank of America to determine the property status."[16] Plaintiff alleges that she was "informed by Ms. Squire ... that her home was foreclosed on September 9, 2010."[17] Plaintiff alleges that she "researched the recording of deeds for the property and found records on the County of Pinal website stating the land was 'purchased' on September 23, 2010 from Michael and Bernadine Foster."[18]

Plaintiff alleges that she "never received a demand letter for payment or late notices for payment."[19] Plaintiff further alleges that she "was never given foreclosures notices", "never given notice of public sale information", and "never given a decision on the modification before the home was foreclosed on by Bank of America."[20]

---

[15]Id. at ¶ 32.

[16]Id.

[17]Id. at ¶ 33.

[18]Id. at ¶ 39; see also, Trustee's Deed Upon Sale Arizona, Exhibit C, Motion to Dismiss Complaint, Docket No. 7.

[19]Complaint at ¶ 34, attached to Notice of Removal, Docket No. 1.

[20]Id. at ¶¶ 35-37.

On September 19, 2013, plaintiff commenced this action. In her complaint, plaintiff asserts the following claims: 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, 3) consumer fraud, and 4) intentional infliction of emotional distress.[21]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiff's complaint.

Discussion

"To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 571 (2007)). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Twombly, 550 U.S. at 555). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." Marder

[21]Defendants also believe that plaintiff has alleged "foreclosure related claims" but plaintiff's complaint contains only these four claims.

v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Id. (quoting Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)). The court may also "'take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.'" Intri–Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).

Defendants have attached three documents to their motion to dismiss: 1) the Deed of Trust for the subject property, 2) the Notice of Trustee's Sale, and 3) the Trustee's Deed upon Sale. The court may consider the Deed of Trust without converting the instant motion to dismiss into a motion for summary judgment because plaintiff's complaint makes reference to it, it is central to some of plaintiff's claims, and no one questions its authenticity. The court may consider the Notice of Trustee's Sale and the Trustee's Deed upon Sale without converting the instant motion into a motion for summary judgment because these are matters of public record.

Defendants first argue that plaintiff's breach of contract claim should be dismissed. Plaintiff alleges that "a contract clearly existed between [p]laintiff and defendants" and that [d]efendant[]s breached the agreement by foreclosing on the property."[22] Defendants argue that the only enforceable contract between plaintiff and defendants is the Deed of Trust and that nothing in the Deed of Trust provided that defendants would not foreclose. Thus, defendants argue that plaintiff has failed to state a plausible breach of contract claim.

Plaintiff has, however, stated a plausible breach of contract claim based on the Deed of Trust. The Deed of Trust requires the lender to "give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument...."[23] Plaintiff alleges that she "was never informed from Bank of America regarding being delinquent on her mortgage payment or that payments made were short."[24] Plaintiff also alleges that she "never received a demand letter for payment or late notices for payment."[25] This lack of notice could constitute a breach of the Deed of Trust and thus plaintiff has stated a plausible breach of contract claim.

---

[22]Complaint at ¶¶ 43, 45, attached to Notice of Removal, Docket No. 1.

[23]Deed of Trust at 5, ¶ 21, Exhibit A, Motion to Dismiss Complaint, Docket No. 7.

[24]Complaint at ¶ 17, attached to Notice of Removal, Docket No. 1.

[25]Id. at ¶ 34.

Defendants seem to then argue that plaintiff has not alleged that the contract that was breached was the Deed of Trust, but rather was some verbal agreement. If plaintiff's breach of contract claim were based on a verbal agreement, it would be barred by the Statute of Frauds. The Arizona Statute of Frauds provides that in cases involving "the sale of real property or an interest therein," "[n]o action shall be brought in any court ... unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized[.]" A.R.S. § 44-101(6). But, the Statute of Frauds has no application here because plaintiff has alleged that her breach of contract claim is based on the Deed of Trust, not some verbal agreement.

Defendants then argue that any claim by plaintiff that she did not receive notice would not be plausible. A trustee's deed issued pursuant to a trustee's sale

> raise[s] the presumption of compliance with the requirements of the deed of trust and this chapter relating to the exercise of the power of sale and the sale of the trust property, including recording, mailing, publishing and posting of notice of sale and the conduct of the sale. A trustee's deed shall constitute conclusive evidence of the meeting of those requirements in favor of purchasers or encumbrancers for value and without actual notice.

A.R.S. § 33-811(B). Because a trustee's deed was issued in this case, defendants argue that this conclusive presumption of compliance applies.

Defendants cite to Coleman v. American Home Mortgage Servicing, Inc., Case No. CV 09-2692 PHX DGC, 2010 WL 1268141 (D. Ariz. March 30, 2010), in support of this argument. There, Coleman refinanced her home with Option One, and then three years later, "received a letter stating that Option One would no longer be servicing her loan and that, instead, American Home would be responsible for servicing her loan and accepting her payments." Id. at *1. Coleman objected to American Home taking over the servicing of her loan and refused to make any payments to American Home. Id. On September 21, 2009, Coleman was advised that she was delinquent on her payments and on December 15, 2009, her home was sold at a trustee's sale. Id. On December 28, 2009, plaintiff filed suit against American Home and others,"alleging claims for fraud, misrepresentation, violation of 12 U.S.C. § 2605, mismanagement of funds, theft/conversion, and wrongful foreclosure, and demanding that Defendants deed the house back to her, void her mortgage contract, cancel the trustee's sale, and pay her damages." Id. at *2. In connection with Coleman's claim that the trustee's sale was based on a fraudulent assignment, the court observed that

> A.R.S. § 33–811(B) ... states that a 'trustee's deed shall constitute conclusive evidence of the meeting of [the requirements relating to the exercise of the power of sale and the sale of the trust property] in favor of purchasers or encumbrancers for value and without actual notice.' The trustee's deed is provided in this case and constitutes evidence of regularity in the trustee's sale.

Id. at *4.

While the trustee’s deed may be evidence of the regularity of the trustee’s sale, it does not necessarily mean that plaintiff has not stated a plausible breach of contract claim. In Coleman, it was undisputed that Coleman had received notice of the sale. Id. In contrast here, plaintiff has alleged that she was never notified about the sale and that she was never notified in 2010 that her mortgage payments were delinquent. Moreover, “a trustee's deed is conclusive evidence that a trustee’s sale met all statutory requirements.” Federal Nat’l Mortg. Ass’n v. Tobias, Case No. 1 CA–CV 12–0845, 2013 WL 6388634, at *2 (Ariz. Ct. App. Dec. 5, 2013) (emphasis added). Here, plaintiff alleges that defendants did not meet all of their contractual duties. Plaintiff’s breach of contract claim is plausible.

Defendants next argue that plaintiff’s breach of the implied covenant of good faith and fair dealing claim should be dismissed. Plaintiff alleges that defendants breached the implied covenant because they “accept[ed] the payments from [her]” and did not “honor[] the Agreement[.]”[26] Defendants argue that this claim fails because the only agreement between plaintiff and defendants is the Deed of Trust, the terms of which allowed defendants to foreclose if plaintiff were in default. It is a “well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract.” Norman v. State Farm Mut. Auto. Ins. Co., 33 P.3d 530,

---

[26]Complaint at ¶ 50, attached to Notice of Removal, Docket No. 1.

532 (Ariz. Ct. App. 2001). Thus, defendants argue that absent another signed agreement, plaintiff has no claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff has stated a plausible breach of the implied covenant of good faith and fair dealing claim based on the Deed of Trust. She has alleged that defendants failed to provide proper notice and misled her into believing that she needed to do a modification of her loan, conduct which adversely affected the reasonable benefits of the bargain that she expected.

Defendants next argue that plaintiff's consumer fraud claim should be dismissed because it is barred by the statute of limitations. Plaintiff alleges that defendants "committed consumer fraud when their employees deliberately gave [her] misleading and false information regarding [her] insurance claim and [the] status of [her] property."[27] Plaintiff further alleges that defendants "failed to follow bank policies as well as Arizona Statute[s] when [they] used the misleading information to foreclose on [her] property."[28] Plaintiff alleges that she was given false and misleading information in August 2007, April 2010, June 2010, and November 2010, and that the foreclosure occurred in September 2010.[29]

---

[27]Id. at ¶ 55.

[28]Id. at ¶ 56.

[29]Id. at ¶¶ 18, 26-28, 32-33, & 39.

"The Consumer Fraud Act statute of limitations is one year." Teran v. Citicorp Person-to-Person Financial Ctr., 706 P.2d 382, 389 (Ariz. Ct. App. 1985). "[A] plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Amer., 898 P.2d 964, 966 (Ariz. 1995). Plaintiff knew of the facts underlying her consumer fraud claim by at least November 2010, which is when she alleges she learned of the foreclosure. If plaintiff were aware of the foreclosure in November 2010, she had until November 2011 to bring a consumer fraud claim. Plaintiff's complaint was not filed until September 19, 2013. Thus, plaintiff's consumer fraud claim is time barred, and it is dismissed.

Defendants next argue that plaintiff's claim for intentional infliction of emotional distress should be dismissed because it is time barred. In Arizona, a two-year statute of limitations applies to claims for injuries to the person. A.R.S. § 12-542(1); Cecala v. Newman, 532 F. Supp. 2d 1118, 1142 (D. Ariz. 2007) (applying two-year statute of limitations to an intentional infliction of emotional distress claim). Defendants argue that assuming that plaintiff did not learn of the foreclosure until November 2010, she had until November 2012 to file her intentional infliction of emotional distress claim. Because plaintiff's complaint was not filed until September 19, 2013, defendants argue that plaintiff's intentional infliction of distress claim is time barred.

Plaintiff argues that the November 2010 foreclosure is not the only allegation that supports her intentional infliction of emotional distress claim. Plaintiff points out that she has alleged that her family had to move into a condemned building after the foreclosure.[30] She also points out that she has alleged that defendants told her "that she was current and paid up on the land till 2012."[31] Plaintiff argues that this allegation shows that defendants' misleading tactics dragged on until at least 2012.

Contrary to plaintiff's contentions, she has not alleged any conduct by defendants that occurred after 2010. Even assuming that plaintiff was told that she was "paid up" on the land until 2012, this statement was allegedly made in April 2010.[32] Plaintiff's intentional infliction of emotional distress claim is time barred, and it is dismissed.

Conclusion

Defendants' motion to dismiss[33] is granted in part and denied in part. Plaintiff's consumer fraud and intentional infliction of emotional distress claims are dismissed. Defendants' motion is otherwise denied. Amendment as to the two dismissed claims would be futile because they are time barred. However, plaintiff requests that if the court

---

[30]Complaint at ¶ 63, attached to Notice of Removal, Docket No. 1.

[31]Id. at ¶ 27.

[32]Id. at ¶ 26.

[33]Docket No. 7.

finds that her consumer fraud claim is time barred, she be given leave to amend to assert a common law fraud claim, for which the statute of limitations period is three years. See A.R.S. § 12-543(3). This request is denied because the court cannot determine, based on what is currently before it, whether such a claim would be plausible. If plaintiff wishes to amend her complaint to add a new claim, she must file a separate, properly noticed motion to amend.

DATED at Anchorage, Alaska, this 3rd day of February, 2014.

/s/ H. Russel Holland
United States District Judge